# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DEJUAN HOPSON,

*Plaintiff-Appellee*,

*v.*

JACOB ALEXANDER AND BRANDON GRISSOM,

*Defendants-Appellants.*

On Appeal from the United States District Court for the District of Arizona
No. 2:20-cv-00128-SMB-DMF
Hon. Susan M. Brnovich

## BRIEF FOR PLAINTIFF-APPELLEE

MARY V. SOOTER
MARGARITA BOTERO
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1225 Seventh Street, Unit 2600
Denver, CO  80202
(720) 274-313F1331

SOPHIE B. COOPER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 949111
(628) 235-1000

March 24, 2022

**ADDITIONAL COUNSEL LISTED ON INSIDE COVER**

THOMAS F. LAMPERT
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

OREN NIMNI
RIGHTS BEHIND BARS
416 Florida Ave. NW Unit #26152
Washington, DC 20001
(202) 540-0029

*Attorneys for Plaintiff-Appellee*

# TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................1

JURISDICTIONAL STATEMENT ......................................................3

ISSUES PRESENTED............................................................................4

STATEMENT OF THE CASE................................................................4

    A.    Factual Background.................................................................4

    B.    This Lawsuit ............................................................................7

    C.    This Appeal ...........................................................................10

SUMMARY OF THE ARGUMENT ....................................................11

STANDARD OF REVIEW ..................................................................14

ARGUMENT ........................................................................................15

I.    APPELLANTS IMPROPERLY ASK THIS COURT TO MAKE FACTUAL ASSUMPTIONS THAT TAKE THE RECORD IN THEIR FAVOR, WHICH THE COURT LACKS JURISDICTION TO DO ...........................................15

II.    APPELLANTS' USE OF FORCE WAS OBJECTIVELY UNREASONABLE ......................................................................19

    1.    The Intrusion on Mr. Hopson's Fourth Amendment Rights Was Severe. ...................................................20

    2.    The Government Had No Countervailing Interests......................22

        a.    Severity of the Crime......................................................23

        b.    Threat to Appellants or Others .......................................24

        c.    Resisting Arrest or Attempt to Evade Arrest..................25

        d.    Alternative Methods for Subduing a Suspect.................26

        e.    Warning Before Force Was Used....................................27

    3.    The Factors Weigh in Mr. Hopson's Favor..................................27

    B.    Appellants' Arguments That Their Force Was "Objectively Reasonable" Are Without Merit ....................................29

III.   DEFENDANT-APPELLANTS VIOLATED CLEARLY ESTABLISHED
       LAW IN MULTIPLE WAYS AND ARE NOT ENTITLED TO
       QUALIFIED IMMUNITY ..................................................................31

       A.     Appellants Violated Clearly Established Law When They
              Pointed Their Weapons At Mr. Hopson...............................32

              1.     Appellants Were On Notice That Their Actions
                     Violated Mr. Hopson's Constitutional Rights .........................32

              2.     Appellants' Attempt to Distinguish Existing
                     Precedent From The Facts of This Case Are
                     Unavailing.................................................................41

       B.     Appellants Violated Clearly Established Law When They
              Used Force Against Mr. Hopson Without Identifying As
              Officers ...............................................................................46

       C.     Appellants Violated Clearly Established Law When They
              Effectuated Mr. Hopson's Arrest .........................................48

       D.     Appellants Violated Clearly Established Law When They
              Used Force Without Reasonable Suspicion ........................50

CONCLUSION ........................................................................................51

STATEMENT OF RELATED CASES

CERTIFICATE OF COMPLIANCE

ADDENDUM

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alexander v. Cty. of L.A.*, 64 F.3d 1315 (9th Cir. 1995)..............................30, 36, 37

*Aponte Matos v. Toledo Davila*, 135 F.3d 182 (1st Cir. 1998) ..................30, 31, 32

*Baird v. Renbarger*, 576 F.3d 340 (7th Cir. 2009) ....................................................41

*Brown v. Lewis*, 779 F.3d 401 (6th Cir. 2015)...........................................................41

*Bryan v. Las Vegas Metro. Police Dep't*, 349 F. App'x 132 (9th Cir. 2009) ...........................................................................................................................47

*C.V. ex rel. Villegas v. City of Anaheim*, 823 F.3d 1252 (9th Cir. 2016) ...............23

*Chew v. Gates*, 27 F.3d 1432 (9th Cir. 1994) .....................................................23, 26

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001).......................................23, 28

*Emmons v. City of Escondido*, 921 F.3d 1172 (9th Cir. 2019) (per curiam) ...........................................................................................................................32

*Espinosa v. City & Cty. of S.F.*, 598 F.3d 528 (9th Cir. 2010)........................*passim*

*Glenn v. Washington Cty.*, 673 F.3d 864 (9th Cir. 2011) ............................20, 23, 27

*Graham v. Connor*, 490 U.S. 386 (1989) ..........................................................*passim*

*Green v. City and Cnty. of S.F.*, 751 F.3d 1039 (9th Cir. 2014)............29, 43, 49, 51

*Hansen v. Black*, 885 F.2d 642 (9th Cir. 1989) .......................................................22

*Headwaters Forest Def. v. Cty. of Humboldt*, 240 F.3d 1185 (9th Cir. 2000), *vacated and remanded on other grounds,* 534 U.S. 801 (2001)........................................................................................................24, 25, 26, 52

*Hines v. Youseff*, 914 F.3d 1218 (9th Cir. 2019) ....................................................48

*Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179 (10th Cir. 2001)...........................................................................................................................41

*Horton v. City of Santa Maria*, 915 F.3d 592 (9th Cir. 2019)................................40

*Jeffers v. Gomez*, 267 F.3d 895 (9th Cir. 2001)..............................................*passim*

*Kisela v. Hughes*, 138 S. Ct. 1148 (2018) (per curiam)..........................................32

*Liberal v. Estrada*, 632 F.3d 1064 (9th Cir. 2011) ...............................14, 50, 51, 52

*Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2003)..................................................21

*Miller v. Clark Cty.*, 340 F.3d 959 (9th Cir. 2003)..................................................21

*Moonin v. Tice*, 868 F.3d 853 (9th Cir. 2017) ........................................................40

*Nelson v. City of Davis*, 685 F.3d 867 (9th Cir. 2012) .....................................23, 28

*Northington v. Jackson*, 973 F.2d 1518 (10th Cir. 1992)........................................47

*Orn v. City of Tacoma*, 949 F.3d 1167 (9th Cir. 2020) ....................................15, 32

*Palmer v. Sanderson*, 9 F.3d 1433 (9th Cir. 1993)..................................................22

*Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002)............................*passim*

*S.B. v. Cty. of San Diego*, 864 F.3d 1010 (9th Cir. 2017)........................................15

*Santos v. Gates*, 287 F.3d 846 (9th Cir. 2002)............................................21, 22, 24

*Scott v. Harris*, 550 U.S. 372 (2007) .....................................................................20

*Sledd v. Lindsay*, 102 F.3d 282 (7th Cir. 1996) .....................................................47

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) (en banc) ...........................15

*Smith v. City of Stockton*, 818 F. App'x 697 (9th Cir. 2020) ..........................45, 46

*Stamps v. Town of Framingham*, 813 F.3d 27 (1st Cir. 2016) ...............................40

*Tarabochia v. Adkins*, 766 F.3d 1115 (9th Cir. 2014)............................................40

*Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007) ........................................32, 39

*Thompson v. Rahr*, 885 F.3d 582 (9th Cir. 2018).............................................44, 45

*Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011) ......................................23

*Turmon v. Jordan*, 405 F.3d 202 (4th Cir. 2005) .............................................41, 50

*United States v. Buffington*, 815 F.2d 1292 (9th Cir. 1987) ........................34, 36, 37

*United States v. Jones*, 4 F. App'x 394 (9th Cir. 2001)..........................................24

*United States v. Serna–Barreto*, 842 F.2d 965 (7th Cir. 1988) .............................36

*United States v. Taylor*, 716 F.2d 701 (9th Cir. 1983) ..........................................33

*Vlasak v. Las Vegas Metropolitan Police Dept.*, 213 F. App'x 512
    (9th Cir. 2006) ...........................................................................14, 47, 48, 49

*Washington v. Lambert*, 98 F.3d 1181 (9th Cir. 1996).............................................*1*

*White v. Pauly*, 137 S. Ct. 548 (2017) .................................................................32

*Williams v. City of Champaign*, 524 F.3d 826 (7th Cir. 2008).........................30, 31

*Willis v. City of Fresno*, 520 F. App'x 590 (9th Cir. 2013) ...................................47

*Winterrowd v. Nelson*, 480 F.3d 1181 (9th Cir. 2007) ....................................*passim*

*Yates v. City of Cleveland*, 941 F.2d 444 (6th Cir. 1991)......................................47

## STATUTES, RULES, AND REGULATIONS

28 U.S.C. § 1291 ....................................................................................................3

28 U.S.C. §§ 1331 and 1343(a)(3)...........................................................................3

42 U.S.C. § 1983 ............................................................................................*passim*

U.S. CONST. amend. IV..................................................................................*passim*

Fed. R. Civ. P. 56(a)..............................................................................................14

# INTRODUCTION

"[A]ll people have a right to be free from the terrifying and humiliating experience of being pulled from their cars at gunpoint … *every time* [officers] have an 'articulable basis' for thinking that someone may be a suspect in a crime." *Washington v. Lambert*, 98 F.3d 1181, 1187-90 (9th Cir. 1996).  But on January 25, 2018—under the guise of "reasonable suspicion" that a future crime *might* occur—Appellants did exactly that.  Officers Jacob Alexander and Brandon Grissom ("Appellants") approached Dejuan Hopson ("Appellee" or "Mr. Hopson") at gunpoint, forcefully removed him from his vehicle, and aggressively handcuffed him—all despite having no indication whatsoever that Mr. Hopson was armed or dangerous, posed any threat to themselves or others, and without identifying themselves as police officers.  ER-069-070 (Dkt. No. 6), ER-019.

Depending on two faulty premises, Appellants now appeal the district court's denial of their demand for qualified immunity and ask this Court to find— without further fact finding—that their conduct should be immune from further inquiry.  Dkt. 5.  Appellants' arguments should be rejected.  *First*, Appellants justify their pointing of weapons by claiming—in direct contradiction of the record—that they believed Mr. Hopson "was armed and about to commit a robbery." *See, e.g.*, Dkt. 5 at 16.  But Appellants conveniently substitute their desired facts for those present in this matter and ignore that the district court

expressly rejected their precise argument, noting that "[Appellants] have not pointed to any evidence in the record that demonstrates that they believed, *reasonably or otherwise*, that Plaintiff had a weapon or that he otherwise posed a threat to their safety or the safety of others." ER-019 (emphasis added). Importantly, that Appellants found a weapon in Mr. Hopson's vehicle *after* they used excessive force against Mr. Hopson does not right their constitutional wrong. *Second*, Appellants claim there is only one meaningful use of force in this case— the pointing of weapons at Mr. Hopson. *Id*. Here, again, Appellants conveniently ignore that Mr. Hopson has alleged that they forcefully removed him from his vehicle, yanked his left arm, and aggressively handcuffed him—all without identifying themselves as police officers. ER-069-070. Appellants develop no argument as to those independent allegations on unconstitutional use of force.

Viewing the facts in the light most favorable to Mr. Hopson—as required at this stage of the proceedings, *Jeffers v. Gomez*, 267 F.3d 895, 903 (9th Cir. 2001)—the record shows that Appellants violated Mr. Hopson's constitutional rights. Specifically, Mr. Hopson was conversing with a friend in his vehicle when Appellants approached his vehicle at gunpoint on suspicion that Mr. Hopson and his friend "might commit a crime" at some indefinite point in the future; Appellants then forcefully dragged Mr. Hopson out of his vehicle, yanked his left arm, and forcefully handcuffed him. Appellants' actions were not motivated by

any belief that Mr. Hopson was armed or that he posed a threat to anyone's safety. And because Appellants did not identify themselves as officers, their actions left Mr. Hopson in a state of shock thinking that he himself was the victim of an armed robbery. Under these circumstances, any reasonable officer would have known that Appellants' actions were unconstitutional, and existing precedent gave Appellants ample notice that their actions were unlawful. Any other outcome would give police "carte blanche" to brandish their weapons and use force against individuals who, like Mr. Hopson, happen to be conversing in their cars at the wrong time and place. Accordingly, the district court's decision should be affirmed.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over Mr. Hopson's action under 28 U.S.C. §§ 1331 and 1343(a)(3) because the complaint seeks damages for violations of constitutional rights pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over this interlocutory appeal from the district court's order denying qualified immunity pursuant to 28 U.S.C. § 1291 only if it assumes that the version of material facts asserted by Mr. Hopson, the non-moving party, is correct, and resolves all factual disputes in Mr. Hopson's favor. *See Jeffers*, 267 F.3d at 903. Mr. Hopson agrees with Appellants' jurisdictional statement with respect to the timeliness of this appeal.

## ISSUES PRESENTED

1.     Whether Appellants violated Mr. Hopson's Fourth Amendment rights during a traffic stop for which they lacked reasonable suspicion, and during which they failed to identify themselves as officers, pointed their weapons at Mr. Hopson, and forcibly removed him from his vehicle even though Appellants had no indication that Mr. Hopson was armed, and he did not pose a threat to anyone.

2.     Whether clearly established law put Appellants on notice that conducting a traffic stop without reasonable suspicion, pointing their weapons at Mr. Hopson, and forcibly removing Mr. Hopson from his vehicle—all without announcing they were officers and with no indication that Mr. Hopson was armed or that he posed a threat to Appellants or others—violated Mr. Hopson's Fourth Amendment rights.

## STATEMENT OF THE CASE

### A.     Factual Background[1]

Mr. Hopson parked his vehicle in front of a gas station in the afternoon of January 25, 2018, where he proceeded to have "a private conversation" with a friend. ER-069. Appellant Alexander "parked his vehicle directly behind [Mr. Hopson's] vehicle to prevent [Mr. Hopson] from leaving and, without

---

[1] This Court has jurisdiction over this appeal *only* if it applies the law viewing all facts in the light most favorable to Mr. Hopson. *See Jeffers*, 267 F.3d at 903. Accordingly, Mr. Hopson presents the facts in that light.

announcing that he was a police officer, approached [Mr. Hopson] at gunpoint" in an attempt to conduct a *Terry* stop. *Id*.; *Terry v. Ohio*, 392 U.S. 1, 21 (1968) (finding that to justify a search a "police officer must be able to point to specific and articulable facts" that "reasonably warrant intrusion"). "[W]ithout any provocation or resistance on [Mr. Hopson's] part" (or his friend's), Appellant Alexander "opened [Mr. Hopson's] driver's side door"—still without announcing he was a police officer—and "forcefully removed [Mr. Hopson] from the vehicle." *Id*. Appellant "Alexander allegedly placed his hand on [Mr. Hopson]'s left arm and grabbed it with such force that [Mr. Hopson] was 'put … in a state of shock' and thought he was being robbed," *id*., because, again, Appellant Alexander had not identified himself as an officer.

While Appellant Alexander forcefully removed Mr. Hopson from the vehicle and forcefully grabbed his left arm, Appellant Grissom—also without announcing he was an officer—was standing in front of Mr. Hopson's vehicle with a gun pointed directly at Mr. Hopson, "as if to challenge [Mr. Hopson] to resist so [Appellant Grissom] could shoot [Mr. Hopson]." ER-069. Appellant Alexander forcefully placed Mr. Hopson in handcuffs and "verbally dared [Mr. Hopson] to make a move in resistance to his actions." *Id*. Appellants then handcuffed Mr. Hopson with his hands behind his back and instructed him to sit on the curb.

*Id*.  "[N]either [Mr. Hopson] nor his passenger resisted or were verbally or physically threatening to any of the officers." *Id*.

While Mr. Hopson sat on the curb—with Appellant Grissom standing behind Mr. Hopson and watching his "every move"—Appellant Alexander ordered four other officers to search Plaintiff's vehicle.  ER-069-070.  Marijuana was found in Mr. Hopson's vehicle, but he told Appellants that he was a "medical marijuana card holder."  *Id*. at 070.  Despite being told of the legality of Mr. Hopson's marijuana, Appellant Alexander "re-searched [Mr. Hopson]'s vehicle and found a weapon."  *Id*.  At the conclusion of this ordeal, Mr. Hopson was charged with several crimes, including misconduct involving weapons and possession of marijuana. *Id*.

The criminal charges against Mr. Hopson were ultimately dismissed.  In the underlying criminal case, Mr. Hopson moved to suppress all evidence from the stop.  ER-070.  The Maricopa County Superior Court found it was an illegal stop and granted Mr. Hopson's motion to suppress the "[i]llegally [o]btained [e]vidence."  *Id*.  In so doing, "the trial court stated the stop was an investigatory stop and 'there was insufficient justification for the stop based upon the officer's observations of the passenger looking around intently and moving his car, and [Mr. Hopson] and the passenger sitting in [Mr. Hopson]'s vehicle for a short period of time.'"  *Id*. (cleaned up).  Critically, "the trial court concluded there was

'insufficient justification for an investigatory stop at the time the stop was initiated' and 'the fact that [Appellant] Alexander smelled marijuana coming from [Mr. Hopson]'s vehicle and discovered he was driving on a suspended license after the stop, does not erase the taint of the illegal stop." *Id*. at 070-071 (cleaned up). As a result, all charges were dismissed after the trial court granted Mr. Hopson's "motion to suppress for unlawful arrest, no probable cause, and no reasonable susp[ic]ion." *Id*. at 069-070.[2]

**B.    This Lawsuit**

On January 16, 2020, Mr. Hopson brought this § 1983 action based on Appellants' use of excessive force in violation of his constitutional rights.  ER-067. On March 17, 2020, the district court dismissed the complaint for failure to state a claim, and gave Mr. Hopson 30 days to file an amended complaint.  *Id*.  On April 23, 2020, Mr. Hopson filed a first amended complaint (the "FAC").  *Id*. Upon screening the FAC, the district court ordered Appellants to answer counts one and two of the FAC (excessive force and search and seizure, respectively), dismissed count three (due process violation), and gave Mr. Hopson an opportunity to identify the unnamed defendants. *Id*.

On December 22, 2020, Appellants filed a motion for summary judgment, to which Mr. Hopson—acting *pro se*—did not respond.  ER-027.  On September 15,

---

[2] Mr. Hopson is currently incarcerated for an unrelated offense.

2021, the district court entered an Order Granting in Part and Denying in Part

Defendants' Motion for Summary Judgment. *Id.* at 005-022. The district court

granted summary judgment on Mr. Hopson's Fourth Amendment claim regarding

unlawful seizure.[3] *Id.* The district court denied the motion with respect to

Mr. Hopson's excessive force claims under the Fourth Amendment. *Id.* at 022.

Regarding the excessive force claims, the district court weighed the factors under

*Graham v. Connor*, 490 U.S. 386 (1989), and found that each factor favored

allowing Mr. Hopson's excessive force claim to proceed. ER-016-021. The

district court then denied Appellants' request for qualified immunity, reasoning

that it could not resolve key factual disputes on a motion for summary judgment.

In reaching its decision, the district court interpreted the facts in the light most

favorable to Mr. Hopson. *Id.* at 021-022. For example:

---

[3] The district court granted Appellants' motion for summary judgment of qualified
immunity on Mr. Hopson's search and seizure claim because Mr. Hopson failed to
point to clearly established law putting Appellants on notice that their conduct was
constitutionally offensive. ER-014. Mr. Hopson, acting *pro se* (and incarcerated) at
the time, failed to respond to Appellants' summary judgment motion. Because Mr.
Hopson's pro bono counsel was retained after the deadline to file an appeal had
passed, Mr. Hopson does not appeal the district court's decision to grant
Appellants qualified immunity as to that claim. That said, the district court's
findings as to the applicability of qualified immunity to Mr. Hopson's search and
seizure claim have no bearing on his excessive force claim, particularly because—
as the district court noted—the trial court in which the criminal charges were
brought ultimately found "insufficient justification" for Appellants' *Terry* stop.
ER-010.

- Mr. Hopson was inside his own vehicle outside of a gas station "conversing" with a friend.  *Id*. at 015.

- Mr. Hopson had not committed any crime.  *Id*. at 017-018.

- Appellants "suspected" that Mr. Hopson "might" commit a crime at some point in an undefined "future."  *Id*. at 018.

- The record is devoid of evidence suggesting that Appellants "believed, reasonably or otherwise, that [Mr. Hopson] had a weapon or that he otherwise posed a threat to their safety or the safety of others *when Defendant Alexander approached* [Mr. Hopson's] *vehicle*."  *Id*. at 019.

- The record is devoid of evidence suggesting that Appellants believed their safety was at risk when they "forcefully removed [Mr. Hopson] from the vehicle *before* the vehicle was searched."  *Id*.

- "Before a gun was found in [Mr. Hopson's] vehicle, [Appellants] had not observed either Jones or [Mr. Hopson] with any kind of weapon."  *Id*.

- Appellants had "reasonable suspicion" that Mr. Hopson's friend was behaving suspiciously.  *Id*. at 013.

- Because Mr. Hopson was accompanied by someone who was acting suspiciously, a reasonable officer "'could have believed that he had reasonable suspicion to stop [Mr. Hopson].'"  *Id*. at 015 (citation omitted).

- Appellants approached Mr. Hopson at gunpoint "without announcing" they were police officers.  *Id*. at 007.

- "[W]ithout any provocation or resistance from [Mr. Hopson]," Appellant Alexander "opened [Mr. Hopson's] driver's side door and forcibly removed [Mr. Hopson] from the vehicle."  *Id*. at 018.

- Appellant "Alexander placed his hand on [Mr. Hopson's] left arm and grabbed it with such force that [Mr. Hopson] was 'put … in a state of shock' and thought he was being robbed."  *Id*.

- Appellant "Alexander forcefully removed [Mr. Hopson] from the vehicle *before* the vehicle was searched." *Id*. at 019.

- "It is undisputed that [Mr. Hopson] was not evading or resisting arrest at the time Defendant Alexander approached Plaintiff's vehicle." *Id*. at 020.

- Appellant Alexander "forcefully placed [Mr. Hopson] in handcuffs and 'verbally dared [him] to make a move in resistance to his actions.'" *Id*. at 007.

- Appellant "Alexander found the Glock in the center console of [Mr. Hopson's] vehicle" only after searching the car, which was searched only because police department policy requires searches when there is a "plain smell" of marijuana. *Id*. at 019-020.

## C.  This Appeal

On October 13, 2021, Appellants filed their notice of appeal.  ER-003.  On November 16, 2021, this Court issued an Order indicating that "[a] review of the record suggests that this court may lack jurisdiction over this appeal because the qualified immunity issue on appeal appears to turn on disputed facts, not a question of law."  Dkt. 2 at 1.  As a result, this Court suspended the briefing schedule, and instructed Appellants to "either move for voluntary dismissal of the appeal or show cause why it should not be dismissed for lack of jurisdiction."  *Id*. at 1-2.

On November 18, 2021, Appellants filed their motion for cause to not dismiss the appeal.  Dkt. 3.  They argued that this Court has jurisdiction because, "[f]or the purposes of this appeal, the defendant-officers are willing to assume (as is required at this stage) that the plaintiff's version of events is true.  But even if you assume all the plaintiff's (unsubstantiated) allegations are true, he still clearly

loses this case." *Id.* at 2 (citation omitted). Appellants further told this Court that once this Court resolves "factual dispute[s] in the plaintiff's favor, this case involves only 'pure questions of law.'" *Id.* (citation omitted) Importantly, Appellants told this Court:

> The [A]ppellants are not asking this Court to resolve any factual disputes in their favor, and they are not asking this Court to overturn any of the district court's factual finding. To the contrary, they are asking this Court to resolve any material factual disputes in the plaintiff's favor and find that he still loses. Under this procedural posture, it is well-settled that this Court has jurisdiction over this case.

*Id.* at 3. On January 19, 2022, this Court discharged the order to show cause, and instructed the clerk to file Appellants' opening brief. Dkt. 17.

## SUMMARY OF THE ARGUMENT

The district court properly denied Appellants qualified immunity on Mr. Hopson's excessive force claim. For several independent reasons, Appellants are not entitled to qualified immunity.

Despite their promise to take all facts in the light most favorable to Mr. Hopson, Appellants' entire brief rests on factual premises that wholly depart from the record in this case. Specifically, Appellants repeatedly attempt to justify their actions by asserting that they believed Mr. Hopson was armed and dangerous, and further contend that the "only" force at issue in this case is Appellants' decision to point their loaded weapons at Mr. Hopson. Dkt. 5 at 16, 20. Appellants are wrong on both counts.

As to the first assumption, the district court found that, even though Appellants may have "*suspected* that Mr. Hopson *might* commit a crime" at some indefinite point in the future, nothing in the record suggests that Appellants reasonably believed Mr. Hopson was armed or that he posed a danger to anyone. ER-019. Second, the force Appellants used against Mr. Hopson went well beyond pointing their weapons. Appellants forcefully dragged Mr. Hopson from his vehicle, yanked his left arm, and forcibly handcuffed him—all without reasonable suspicion and without identifying themselves as officers. *Id*. at 069-070. In short, Appellants invite this Court to make findings of its own, which this Court lacks jurisdiction to do.

Based on the actual record in this case—a record Appellants have chosen to ignore—and construing the evidence in the light most favorable to Mr. Hopson, there can be no doubt that the force Appellants used was not objectively reasonable and that clearly established precedent put Appellants on notice that their actions were unconstitutional.

*First*, as the district court correctly found—viewing the facts in the light most favorable to Mr. Hopson—Appellants' use of force "was greater than reasonable under the circumstances." ER-021. Appellants improperly present the record in their favor to argue that they did not use excessive force.

*Second*, precedent plainly put Appellants on notice that their actions were unlawful.  Under clearly established precedent, Appellants' threat of deadly force—pointing loaded weapons at Mr. Hopson—was justified only if they reasonably believed Mr. Hopson was a threat to their safety or the safety of others. *Washington*, 98 F.3d at 1190.  But the record, taken in the light most favorable to Mr. Hopson, does not support Appellants' factual assertion that they reasonably believed Mr. Hopson was armed or dangerous.  ER-019.  Accordingly, the only possible conclusion at this stage of the proceedings is that Appellants were on notice that their decision to point weapons at Mr. Hopson was constitutionally unlawful.

Clearly established authority shows that "[w]hether the officers are entitled to qualified immunity turns on whether and when they identified themselves to [suspects] as police officers." *Vlasak v. Las Vegas Metro. Police Dep't*, 213 F. App'x 512, 514 (9th Cir. 2006).  The record taken in Mr. Hopson's favor reveals that Appellants never identified themselves as officers.  *See* ER-069-070.  Further, this Court's case law also put Appellants on notice that—unless a suspect poses a danger to police or others—officers cannot forcefully drag someone out of their vehicle, yank their arms, and painfully handcuff them.  *See Winterrowd v. Nelson*, 480 F.3d 1181, 1185 (9th Cir. 2007).  Yet, Appellants did just that.  *See* ER-069-070.  Finally, clearly established law shows that investigatory stops violate the

Fourth Amendment if they do not rest on "reasonable suspicion," and that officers may not "frisk" suspects during such stops unless they "reasonably suspect that the person stopped is armed and dangerous." *See Liberal v. Estrada*, 632 F.3d 1064, 1078-79 (9th Cir. 2011). Here, the trial court found that the stop was unlawful in the first instance, ER-070-071, and the district court found that Appellants did not believe Mr. Hopson was armed or dangerous, ER-019. Appellants' use of force in this case was thus plainly unconstitutional under clearly established precedent, when the facts are taken (as Appellants concede they must be) in Mr. Hopson's favor.

The district court's judgment should therefore be affirmed, so that this case can proceed to trial. There are genuine issues of fact that preclude judgment in Appellants' favor.

## STANDARD OF REVIEW

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This Court reviews de novo a district court's ruling that a police officer is (or is not) entitled to qualified immunity. *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017). If the parties' versions of the facts differ, this Court uses the version most favorable to the non-moving party. *Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005) (en banc).

## ARGUMENT

In evaluating an assertion of qualified immunity, courts undertake a two-part analysis: (1) whether the facts taken in the light most favorable to the plaintiff show that "the officer's conduct violated a constitutional right," and (2) whether that right was "clearly established at the time of the officer's actions, such that any reasonably well-trained officer would have known that his conduct was unlawful." *Orn v. City of Tacoma*, 949 F.3d 1167, 1174 (9th Cir. 2020).

As relevant to this appeal, Appellants' attempt to argue that they are entitled to qualified immunity fails because their arguments do not take the facts of this case in the light most favorable to Mr. Hopson. *See infra*, Section I. Once the facts are viewed as Mr. Hopson alleges them, the record makes clear that Appellants' conduct violated Mr. Hopson's constitutional rights, *see infra*, Section II, and that this right was "clearly established" when the events at issue took place, *see infra*, Section III.

## I. APPELLANTS IMPROPERLY ASK THIS COURT TO MAKE FACTUAL ASSUMPTIONS THAT TAKE THE RECORD IN THEIR FAVOR, WHICH THE COURT LACKS JURISDICTION TO DO

Appellants' entire brief rests on factual assertions that fail to take the facts in the light most favorable to Mr. Hopson. But as Appellants themselves have acknowledged, this Court lacks jurisdiction to decide this interlocutory appeal by

making factual assumptions in Appellants' favor. In arguing that this Court has appellate jurisdiction, Appellants told this Court:

> Appellants are not asking this Court to resolve any factual disputes in their favor, and *they are not asking this Court to overturn any of the district court's factual findings*. To the contrary, they are asking this Court to resolve any material factual disputes in the plaintiff's favor and find that he still loses.

Dkt. 3 at 2 (emphasis added). In light of their own jurisdictional arguments, Appellants cannot contradict the district court's factual findings. Indeed, this Court's precedent makes clear that this Court has jurisdiction *only* if it applies the law viewing all facts in favor of Mr. Hopson. *See Jeffers*, 267 F.3d at 903 ("[W]e have jurisdiction to consider an interlocutory appeal when, as here, the ground for the motion is qualified immunity. … Where disputed facts exist, however, we can determine whether the denial of qualified immunity was appropriate by assuming that the version of the material facts asserted by the non-moving party is correct. Consequently, we evaluate Appellants' claims of qualified immunity by resolving all factual disputes in [plaintiff's] favor.") (citations omitted).

Appellants' entire opening brief is based on two fundamentally flawed factual premises. *First*, Appellants contend—time and time again—that their actions were not constitutionally offensive because they reasonably believed Mr. Hopson was armed and about to commit a robbery. *See, e.g.*, Dkt. 5 at 5, 7-9, 11, 16, 18-19, 21, 28, 30-32, 36. This contention—which underlies every single

one of Appellants' arguments—directly contradicts the district court's factual

findings. As the district court correctly noted:

> Regarding their belief that Plaintiff was armed, *Defendants have not pointed to any evidence in the record that demonstrates that they believed, reasonably or otherwise, that Plaintiff had a weapon* or that he otherwise posed a threat to their safety or the safety of others when Defendant Alexander approached Plaintiff's vehicle. … *Before a gun was found in Plaintiff's vehicle, Defendants had not observed either Jones or Plaintiff with any kind of weapon.* Defendants' subsequent discovery that Plaintiff was armed does not mean Defendants reasonably believed at the time they pointed their weapons at Plaintiff that Plaintiff was armed. … [Further,] *Defendant Alexander forcefully removed Plaintiff from the vehicle before the vehicle was searched.*

ER-019 (original emphasis removed and new emphasis added). Critically, as the

district court explained, Appellants' discovery of a weapon *after* searching the

vehicle is legally irrelevant to the question whether Appellants used excessive

force when they approached Mr. Hopson's vehicle and effected his arrest—both of

which occurred *before* the weapon was found. *See Winterrowd*, 480 F.3d at 1185

("[T]he troopers imply that their use of force was justified because [plaintiff]

carried a firearm in his car. But they were unaware of this fact when they forced

him onto the hood of their car," and thus, officers used excessive force).

Appellants cannot now contradict the district court's findings and argue—as

they attempt to do—that Mr. Hopson was armed or posed a threat to them *during*

the incident. This Court lacks subject matter jurisdiction to hear the appeal

Appellants have brought—that is, an appeal that has not accepted the facts in the

light most favorable to Mr. Hopson. *See Jeffers*, 267 F.3d at 903. To the extent Appellants believe they can demonstrate that they reasonably believed Mr. Hopson to be dangerous, that is a disputed fact to be determined at trial, not in this interlocutory appeal of an order denying summary judgment.

*Second*, Appellants ignore many important allegations in Mr. Hopson's FAC. In particular, Appellants argue that Mr. Hopson "alleges *only one* meaningful use of force: that the defendant-officers pointed their guns at [Mr. Hopson]." Dkt. 5 at 16 (emphasis added). Based on this mistaken premise, Appellants then argue that (1) their decision to point guns at Mr. Hopson was objectively reasonable, and (2) there was no "clearly established law" regarding officers pointing their weapons at suspects in similar circumstances. But Appellants' wrongs go well beyond pointing their weapons at Mr. Hopson. Specifically, a reasonable jury could also find that Appellants violated clearly established law when they approached Mr. Hopson without reasonable suspicion, or alternatively, when they—without announcing they were officers—"forcefully removed" him from his vehicle, and grabbed his left arm with significant force in effectuating his arrest. *See* ER-080-081. Accordingly, Appellants cannot credibly argue that the *only* "meaningful use of force" in this case is that they pointed loaded weapons at Mr. Hopson.

Because Appellants' entire appeal turns on trying to convince this Court to make factual findings that take the record in the light most favorable to them, not Mr. Hopson, this Court would be well justified in dismissing the appeal for lack of jurisdiction. In any event, once Appellants' flawed factual premises are set aside, the record as properly considered—in Mr. Hopson's favor—shows that Appellants' actions were not objectively reasonable, *see infra* Section II, and that clearly established law put them on notice that their actions were unconstitutional, *see infra* Section III.

## II. APPELLANTS' USE OF FORCE WAS OBJECTIVELY UNREASONABLE

The inquiry in this prong of the analysis is whether Appellants' actions were "objectively reasonable" in light of the facts and circumstances confronting them. *Glenn v. Washington Cty.*, 673 F.3d 864, 871 (9th Cir. 2011) (quoting *Graham*, 490 U.S. at 397); *Espinosa v. City & Cty. of S.F.*, 598 F.3d 528, 537 (9th Cir. 2010) (citing *Scott v. Harris*, 550 U.S. 372, 381 (2007). "This inquiry requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interest at stake." *Glenn*, 673 F.3d at 871 (quoting *Graham*, 490 U.S. at 396) (internal quotation marks omitted). In the Ninth Circuit, the analysis under *Graham* involves three steps. First, courts "must assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force

inflicted.'" *Glenn*, 673 F.3d at 871 (citation omitted). Second, courts "evaluate the government's interest in the use of force." *Id.* Finally, courts "balance the gravity of the intrusion on the individual against the government's need for that intrusion." *Id*. (quotation marks and citation omitted). As explained below, Appellants' actions were not objectively reasonable; they were wholly unreasonable in light of the circumstances here.

> 1. The Intrusion on Mr. Hopson's Fourth Amendment Rights Was Severe.

In evaluating the severity of the intrusion on the plaintiff's Fourth Amendment rights, we evaluate both "the type and amount of force inflicted." *Miller v. Clark Cty.*, 340 F.3d 959, 964 (9th Cir. 2003). Here, Appellants used at least two types of force: they first pointed their loaded weapons at Mr. Hopson; and, in effectuating Mr. Hopson's arrest, they forcibly removed Mr. Hopson from his vehicle and forcefully handcuffed him. *See* ER-080-081; *see also Robinson v. Solano Cty.*, 278 F.3d 1007, 1014 (9th Cir. 2002) (distinguishing between the force used in pointing a weapon to a suspect and the force involved in effectuating the arrest). Both types of force were excessive in light of the circumstances in this case.

At the threshold, "pointing a loaded gun at a suspect, employing the threat of deadly force, is use of a high level of force," *Espinosa*, 598 F.3d at 537, and "can be a violation of the Fourth Amendment," *Robinson*, 278 F.3d at 1014-15.

Similarly, effectuating an arrest with greater force "than is reasonable under the circumstances"—including, but not limited to, applying too much force on a suspect in the process of handcuffing them—can constitute "excess force" in violation of the Fourth Amendment. *See, e.g.*, *Santos v. Gates*, 287 F.3d 846, 854 (9th Cir. 2002) ("[T]he overly tight application of handcuffs can, depending on the circumstances, constitute a violation of the Fourth Amendment."); *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) ("[I]t was objectively unreasonable and a violation of the Fourth Amendment for [the officer] to grab [plaintiff] by the arms, throw her to the ground, and twist her arms while handcuffing her."); *Palmer v. Sanderson*, 9 F.3d 1433, 1436 (9th Cir. 1993) ("Defendants are not entitled to qualified immunity … [Plaintiff] claims that [officers] fastened [plaintiff's] handcuffs so tightly around his wrist that they caused [plaintiff] pain."); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) ("[O]fficers used excess force on [plaintiff] by unreasonably injuring her wrist and arm as they handcuffed her. If [plaintiff] is believed, the police officers' actions were objectively unreasonable in light of the facts and circumstances confronting them."). When considering the force used against Mr. Hopson and drawing all inferences in his favor, the intrusion on Mr. Hopson's Fourth Amendment rights was unlawfully severe. *See, e.g.*, *Espinosa*, 598 F.3d at 537; *Robinson*, 278 F.3d at 1014-15; *Santos*, 287 F.3d at 854; *Palmer*, 9 F.3d at 1436; *Hansen*, 885 F.2d at 645. As a result, the district

court correctly found that this factor weighed in favor of Mr. Hopson's excessive force claim.  ER-018.

2.  The Government Had No Countervailing Interests

To assess the government's interests, this Court evaluates the *Graham* factors, which include "(1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether he was actively resisting arrest or attempting to evade arrest by flight, and any other exigent circumstances that existed at the time of the arrest."  *Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001) (cleaned up and citation omitted); *see also Graham*, 490 U.S. at 396.  These factors are not exclusive; instead, courts must "examine the totality of the circumstances and consider 'whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*.'" *Glenn*, 673 F.3d at 872 (citations omitted).  To that end, courts also consider whether alternative methods were available for subduing a suspect, *see Chew v. Gates*, 27 F.3d 1432, 1441 n.5 (9th Cir. 1994), and whether or not a warning was given before force was used, *see Nelson v. City of Davis*, 685 F.3d 867, 882 (9th Cir. 2012).  The most important factor is "whether the suspect posed an immediate threat to the safety of the officers or others."  *C.V. ex rel. Villegas v. City of Anaheim*, 823 F.3d 1252, 1255 (9th Cir. 2016).  The inquiry is "highly fact-intensive."  *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011).  Here,

the facts—as put forth by Mr. Hopson—would allow the jury to conclude that Appellants used excessive force against Mr. Hopson.

### a. *Severity of the Crime*

The first *Graham* factor is the seriousness of the crime at issue.  Here, Appellants were not responding to a crime, much less a serious crime.  In fact, Mr. Hopson had not even violated traffic laws; he was simply conversing in his car.  *See*, *e.g.*, ER-009.  These circumstances warranted no force whatsoever.  *See Headwaters Forest Def. v. Cty. of Humboldt*, 240 F.3d 1185, 1199 (9th Cir. 2000) ("[W]here there is no need for force, any force used is constitutionally unreasonable."), *vacated and remanded on other grounds,* 534 U.S. 801 (2001).

Indeed, no force was warranted even if Appellants "*suspected* that Plaintiff *might* commit a crime" because when Appellants approached Mr. Hopson's vehicle, they "did not know whether Plaintiff had committed or was about to commit any crime."  ER-018.  This Court analyzed this very issue in *Espinosa*, where officers were dispatched to an apparent "drug house" and pointed their weapons at a suspect after they found a bloody shirt at the location of the incident.  598 F.3d at 537-38.  In affirming the denial of qualified immunity, this Court reasoned that, "even considering the shirt and knife," a reasonable jury could find that the officers violated the plaintiff's Fourth Amendment rights when they pointed their guns at the plaintiff because, *inter alia*, the officers had pointed their

guns at the plaintiff despite "knowing that [the plaintiff] had not been accused of any crime." *Id.*; *see also United States v. Jones*, 4 F. App'x 394, 396 (9th Cir. 2001) (noting that police may point their weapons only when they have "specific information indicating that the suspect has *recently committed a crime*, is carrying a firearm or is acting in a combative or noncooperative manner" (emphasis added)); *cf. Santos*, 287 F.3d at 854 (holding that officers used excessive force in effectuating an arrest because the evidence of a robbery earlier in the day "was minimal and entirely speculative"). Thus, the government had no interest here, and the district court correctly concluded that this factor weighs in favor of Mr. Hopson's excessive force claim.

### b. *Threat to Appellants or Others*

The second *Graham* factor considers whether Mr. Hopson posed an immediate threat of death or serious bodily injury to Appellants. He did not. Mr. Hopson was conversing in his car when Appellants approached him at gunpoint, dragged him out of his car, and yanked his left arm. *See, e.g.*, ER-007-009. He posed no threat to Appellants or anyone else for that matter. *See, e.g.*, 009-011.

Further, as the district court noted, the record—including Appellants' own declarations in support of summary judgment—is devoid of evidence remotely suggesting that Appellants "believed, reasonably or otherwise, that [Mr. Hopson]

had a weapon or that he otherwise posed a threat to [Appellants'] safety or the safety of others *when [Appellants] approached [Mr. Hopson's] vehicle*" or when Appellants "forcefully removed [Mr. Hopson] from the vehicle *before* the vehicle was searched." ER-019. Thus, no force was necessary. *See Headwaters*, 240 F.3d at 1199 ("[W]here there is no need for force, *any* force used is constitutionally unreasonable."). Critically, that Appellants found a weapon after searching the vehicle does not change the outcome of this analysis because Appellants' "*subsequent* discovery that [Mr. Hopson] was armed" does not mean that Appellants reasonably believed at the time they pointed their weapons at Mr. Hopson or forcefully removed him from the vehicle and handcuffed him that he was armed. ER-019; *see also Winterrowd*, 480 F.3d at 1185 (finding that officers used excessive force where, as here, "the troopers imply that their use of force was justified because [plaintiff] carried a firearm in his car. But they were unaware of this fact when they forced him onto the hood of their car."). Thus, Appellants had no reasonable belief of any threat, such that this factor likewise weighs in favor of Mr. Hopson's excessive force claim, as the district court found.

### c. *Resisting Arrest or Attempt to Evade Arrest*

The third *Graham* factor considers whether a suspect is actively resisting arrest or attempting to evade arrest by flight. The district court correctly concluded that this factor weighs in favor of Mr. Hopson because "[i]t is undisputed that

Plaintiff was not evading or resisting arrest at the time Defendant Alexander approached Plaintiff's vehicle." ER-020. Appellants do not argue otherwise.

### d. *Alternative Methods for Subduing a Suspect*

At the outset, where there is no need for force, any force used is excessive. *Headwaters*, 240 F.3d at 1199. And, where force is necessary, courts consider whether alternative methods were available for subduing a suspect. *See Chew,* 27 F.3d at 1441 n.5. While officers need not use the least intrusive means possible when responding to an exigent situation, *Glenn*, 673 F.3d at 876, they are required to consider the availability of other tactics. *Id*. If there were "clear, reasonable and less intrusive alternatives" to the force employed, that "militate[s] against finding [the] use of force reasonable." *Id*. (citation omitted). An important consideration in evaluating the government's interest in the use of force is "whether officers gave a warning before employing the force." *Id*.

Here, the record shows that Appellants required no force whatsoever to subdue Mr. Hopson because he was simply conversing in his car. Even assuming Appellants reasonably suspected that Mr. Hopson was going to commit a crime sometime in the undefined future, Appellants had several alternative methods available to them to subdue Mr. Hopson. For example:

- Appellants could have announced they were police officers before approaching Mr. Hopson's vehicle at gunpoint.

- Appellants "could have knocked on the vehicle's window and asked to speak to [Mr. Hopson] to determine what he was doing in the parking lot." ER-020.

- Appellants could have asked Mr. Hopson to show them his hands and keep them visible.

- Appellants could have asked Mr. Hopson to step out of the vehicle.

- Appellants could have asked Mr. Hopson to put his hands behind his back so that he could be handcuffed.

Appellants failed to utilize a single one of these clearly reasonable alternative tactics. Thus, this factor likewise weighs in favor of Mr. Hopson's excessive force claim.

### e. *Warning Before Force Was Used*

This Court has recognized that "the giving of a warning or the failure to do so is a factor to be considered in applying the *Graham* balancing test." Nelson, 685 F.3d at 882 (quoting *Deorle*, 272 F.3d at 1284). Here, Appellants approached Mr. Hopson at gunpoint, forcefully removed him from the vehicle, and yanked his left arm—all without announcing they were police officers. *See, e.g.*, ER-007-008, 080-081. Thus, Appellants provided no warning before employing this unnecessary force.

### 3. The Factors Weigh in Mr. Hopson's Favor

All of the relevant interests weigh in favor of finding that Appellants used excessive force: (1) Mr. Hopson was not accused of any crime (or even a traffic violation); (2) the record is devoid of evidence even remotely suggesting that the

life or safety of Appellants or others were at risk; (3) Mr. Hopson was not resisting or evading arrest; (4) Appellants had "less intrusive tactics" available to them to subdue Mr. Hopson; and (5) Appellants failed to give any warning whatsoever before using force. These factors, when viewed in light of the severe intrusion on Mr. Hopson's Fourth Amendment rights (*see* Section II.1, *supra*), show that Appellants' use of force was not objectively reasonable. The district court was correct to conclude as much, taking the facts in the light most favorable to Mr. Hopson. *See* ER-017-021 (holding that all factors considered weighed in Mr. Hopson's favor). Accordingly, this Court should affirm the district court's finding that Appellants' use of force was not objectively reasonable. Further, to the extent Appellants dispute any facts alleged by Mr. Hopson, the proper forum for that dispute is at trial, not on this interlocutory appeal. Thus, the district court properly denied Appellants' claim to qualified immunity at summary judgment. *See Green v. City and Cnty. of S.F.*, 751 F.3d 1039, 1052 (9th Cir. 2014) ("We must then determine whether an officer, given the specific facts at issue, 'could have reasonably believed at the time that the force actually used was lawful under the circumstances.' … While also generally a question of law to be determined by the court, there are disputed material facts here that prevent us from making such a finding at this juncture.") (citations omitted).

**B.     Appellants' Arguments That Their Force Was "Objectively
           Reasonable" Are Without Merit**

Appellants' argument that the force they used on Mr. Hopson was

"objectively reasonable" is without merit, as it relies on the two fundamentally

flawed factual assertions described above (*see* Section I) and a misapprehension of

the governing law.

Appellants appear to suggest that, as a matter of law, they were justified in

believing Mr. Hopson was armed and dangerous because they suspected he might

commit a robbery.  Dkt. 5 at 21-22.  Appellants are plainly wrong on the law.  For

example, this Court has held that, in the absence of probable cause, pointing a

weapon at a person believed to be a "drug dealer" may violate the Fourth

Amendment "notwithstanding [the Court's] earlier recognition of the dangers

inherent in the drug trade and our previous statements that drug dealers often carry

weapons."  *Washington*, 98 F.3d at 1190.  Without any indication that Mr. Hopson

was in fact armed and dangerous, Appellants cannot simply leap into that

conclusion by claiming a "reasonable suspicion."

Further, Appellants incorrectly rely on *Alexander* and two out-of-circuit

cases (*Williams* and *Aponte*), but the facts in those cases are fundamentally

different from the facts here.  In both *Alexander* and *Williams*, the officers were

found to not have used excessive force when they pointed guns at suspects

reasonably believed to have been involved in *armed robberies* that had already

taken place.  *See Alexander v. Cty. Of Los Angeles*, 64 F.3d 1315, 1318, 1320-21 (9th Cir. 1995); *Williams v. City of Champaign*, 524 F.3d 826, 828–29 (7th Cir. 2008).  By contrast, Mr. Hopson was conversing in his car and was not suspected of having committed any crime, much less a crime involving weapons; instead, Appellants assert that they "*suspected* that [Mr. Hopson] *might* commit a crime" at *some indefinite time in the future*.  ER-018.  Critically, unlike in *Alexander* and *Williams*, the evidentiary record does not support Appellants' contention that they believed that Mr. Hopson was armed, or that Appellants feared for their safety or the safety of others.  *See, e.g.*, *id.* at 019.

Aponte, which is not controlling here, is likewise inapposite for two reasons. First, in *Aponte*, the First Circuit held that an officer had reasonably pointed a gun at the plaintiff where the plaintiff resisted the officer's instructions to not pass through the blockade of a home "*at the time a police search for weapons was underway.*"  *Aponte Matos v. Toledo Davila*, 135 F.3d 182, 191 (1st Cir. 1998) (emphasis added).  By contrast, it is undisputed that Mr. Hopson did not resist Appellants' actions or ignore their instructions.  Nor did Appellants know or have to reason to believe that Mr. Hopson had a weapon in his possession when they used excessive force against him.[4]  Second, while the First Circuit "doubt[ed] any

---

[4] While Appellants found a weapon after searching the vehicle, this finding occurred only after Appellants used excessive force against Mr. Hopson.  Thus, at

Fourth Amendment violation at all [can] be[] stated" where "no physical force was used on any of the plaintiffs," *id*. at 191, this Court has expressly held that "the pointing of a gun at someone may constitute excessive force, even if it does not cause physical injury," *Tekle v. United States*, 511 F.3d 839, 845 (9th Cir. 2007). Appellants' reliance on *Aponte* is therefore misplaced.

Appellants have accordingly failed to show any error in the district court's ruling that, taking the record in the light most favorable to Mr. Hopson, Appellants violated Mr. Hopson's constitutional rights.

## III. DEFENDANT-APPELLANTS VIOLATED CLEARLY ESTABLISHED LAW IN MULTIPLE WAYS AND ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The second prong of the qualified immunity analysis requires examining whether an officer's conduct violated "clearly established" law, such that any reasonably well-trained officer would have known that his conduct was unlawful. *Orn*, 949 F.3d at 1174. This Court has interpreted this requirement to mean that liability does not attach unless a case exists in which a police officer acting under similar circumstances was held to have violated the Fourth Amendment. *Emmons v. City of Escondido*, 921 F.3d 1172, 1174 (9th Cir. 2019) (per curiam). Importantly, however, the law does not require a prior case with the exact same facts—instead, the law only requires "[p]recedent involving similar facts." *Kisela*

---

the time they used excessive force against Mr. Hopson, they had no reasonable belief that Mr. Hopson was armed or dangerous.

*v. Hughes*, 138 S. Ct. 1148, 1152-53 (2018) (per curiam) ("[T]his Court's case law does not require a case directly on point for a right to be clearly established[.]" (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017))) (cleaned up). Appellants' actions violated clearly established law in several distinct ways.

### A. Appellants Violated Clearly Established Law When They Pointed Their Weapons At Mr. Hopson

#### 1. Appellants Were On Notice That Their Actions Violated Mr. Hopson's Constitutional Rights

In a variety of contexts, this Court has held that officers may not constitutionally point their weapons at suspects, unless the officers have a legitimate fear for their safety. In the context of *Terry* stops, as early as 1983, this Court explained that "it is clear that the drawing of weapons [is] not [] permissible [where] the police had no legitimate fear for their safety and only tenuous reasons to believe that the occupants of the car were involved" in some crime. *United States v. Taylor*, 716 F.2d 701, 708–09 (9th Cir. 1983). Since then, this Court has repeatedly reinforced this legal principle.

For example, in *Washington*, officers believed that two men inside a vehicle met the description of two armed robbers. 98 F.3d at 1184. The two suspects drove to their hotel and entered an underground parking garage. *Id*. When the suspects were "preparing to get out of their car[,] [t]he officers shone spotlights on the two men and pointed their guns at them." *Id*. Officers then instructed each

suspect "to open the car door and get out, raise his hands and interlock his fingers behind his head, face the wall, and close the car door with his feet." *Id*. The two suspects "complied with all orders and offered no resistance." *Id*. After searching the vehicle and running a computer search for the suspects' identities, the officers "concluded their investigation [and] released the two men." *Id*. The two men filed suit under 42 U.S.C. § 1983 alleging a violation of their Fourth Amendment rights.

In analyzing the Fourth Amendment issue at hand, this Court said:

> In this nation, all people have a right to be free from the terrifying and *humiliating experience of being pulled from their cars at gunpoint* [and] handcuffed … when insufficient reason for such intrusive police conduct exists. *The police may not employ such tactics every time they have an "articulable basis" for thinking that someone may be a suspect in a crime.* The infringement on personal liberty resulting from so intrusive a type of investigatory stop is simply too great. Under ordinary circumstances, *when the police have only reasonable suspicion to make an investigatory stop, drawing weapons and using handcuffs and other restraints will violate the Fourth Amendment.*

*Id.* at 1187 (emphasis added). The Court went on to explain that "cases make clear" that "the use of intrusive techniques," such as pointing a weapon at a suspect, is permissible only where: (1) "the suspect is uncooperative or takes action at the scene that raises a reasonable possibility of danger or flight"; (2) "the police have information that the suspect is currently armed"; (3) "the stop closely follows a violent crime"; and (4) police have "specific information"—in the form of an informant tip or prior encounter with the suspect, as required in *United States v. Buffington*, 815 F.2d 1292, 1295 (9th Cir. 1987)—"that a crime that may involve

violence is about to occur." *Washington*, 98 F.3d at 1189.  Accordingly, the Court

explained, where officers do not have "*specific* information" that a suspect is

armed or will forcibly resist police, officers may not constitutionally point their

weapons at a suspect.  *Id*. at 1189-90 & n.15.  Critically, the Court explained that

"*specific* information" refers to tips from informants, or where, for example, an

officer "recognize[s]" a suspect as having "a history of violent criminal behavior."

*Id*.

With this legal framework in mind, the Court in *Washington* affirmed the

district court's directed verdict in favor of the two plaintiffs—that is, that the

officers in fact violated the plaintiffs' Fourth Amendment rights in pointing their

weapons at them—reasoning that the two men "did nothing immediately prior to or

during their confrontation with the police to justify [the officers'] use of a complete

battery of intrusive and threatening procedures *in the context of a Terry stop*."

*Washington*, 98 F.3d at 1190, 1192 (emphasis added).  In so holding, the Court

determined that none of the four scenarios (mentioned above) in which police may

point a weapon at a suspect applied to the case. *Id*.

That clearly established law applies here.  As in *Washington*, Appellants

pointed their guns at Mr. Hopson while he was in his car, and none of the four

scenarios in which police may permissibly point a weapon at a suspect during a

*Terry* stop applies.  Specifically, (1) it is undisputed that Mr. Hopson was not

resisting arrest or attempting to flee, *see* ER-010-011; (2) as the district court concluded, nothing in the record suggests that Appellants believed, reasonably or otherwise, that Mr. Hopson was armed or dangerous, *see id*. at 019; (3) there had not been a violent crime in the vicinity shortly before the stop; and (4) Appellants did not have "*specific* information" to believe that Mr. Hopson was about to commit a dangerous crime. *See Washington*, 98 F.3d at 1189-90 & n.15. Mr. Hopson was simply at the wrong place at the wrong time.

At most, Appellants conducted the *Terry* stop because they "*suspected* that Plaintiff *might* commit a crime" (a fact Mr. Hopson disputes, and that dispute must be taken in his favor at this stage)—they "did not know whether Plaintiff had committed or was about to commit any crime." ER-017-018. However, "suspicion" and "*specific* information" are not the same thing. *See, e.g.*, *Washington*, 98 F.3d at 1190 (officers had no "*specific* information"); *Buffington*, 815 F.2d at 1295 (officers had "specific information" because they had received an informant's tip that three men are planning to rob a bank, and one of the officers recognized the suspect as having a history of violent criminal behavior); *Alexander v. Cty. of L.A.*, 64 F.3d at 1322 (finding that officers had "*specific* identifying features" to stop two suspects at gunpoint because the suspects' vehicle and outfit matched the description given by an eyewitness to an armed robbery that occurred 45 minutes before the traffic stop). Indeed, as this Court has previously

acknowledged, "[i]t would be a sad day for the people of the United States if police had carte blanche to point a gun at each and every person of whom they had an 'articulable suspicion' of engaging in criminal activity." *Washington*, 98 F.3d at 1188-89 (quoting *United States v. Serna–Barreto*, 842 F.2d 965, 967 (7th Cir. 1988)). Appellants have repeatedly taken the position that they had "reasonable suspicion" for a *Terry* stop,"[5] but have never contended (nor could they) that they had any "*specific* information" to believe he was violent or dangerous—that is, Appellants had not had a previous violent encounter with Mr. Hopson, Appellants had not received a tip about the crime that Mr. Hopson was supposedly going to commit, and Appellants never saw any weapons on Mr. Hopson or his friend before approaching the vehicle at gunpoint. *See, e.g.*, *Washington*, 98 F.3d at 1190; *Buffington*, 815 F.2d at 1295; *Alexander*, 64 F.3d at 1322. Accordingly, *Washington* put Appellants on notice that they may not constitutionally point their weapons at a suspect during the course of a *Terry* stop.[6]

---

[5] *See, e.g.*, Dkt. 5 at 6-10; ER-007-011, 028-031, 080-081.

[6] That the issue in *Washington* was whether there was a seizure (as opposed to whether there was excessive force) does not change the outcome of this analysis. Indeed, this Court often relies on search and seizure jurisprudence to determine whether officers used excessive force. *See Robinson*, 278 F.3d at 1013 (analogizing to search and seizure cases in concluding that an officer's pointing of a weapon at a plaintiff constituted excessive force in violation of the Fourth Amendment).

Moreover, outside of the context of *Terry* stops, this Court has similarly held that officers may not constitutionally point their weapons at suspects, unless the officers have a legitimate fear for their safety. For example, in *Espinosa*, (1) officers pointed their guns at the plaintiff despite "knowing that [the plaintiff] had not been accused of any crime," (2) the plaintiff "did not present a danger to the public," (3) officers had been dispatched to the plaintiff's location, which appeared to be a "drug house," (4) officers found a "bloody shirt" at the location before pointing their weapons at the plaintiff; and (5) plaintiff's roommate had been arrested with a knife in his hands before the officers pointed their weapons at the plaintiff. *Espinosa*, 598 F.3d at 537-38. This Court affirmed the denial of qualified immunity, reasoning that, viewing the evidence in the light most favorable to plaintiff, "even considering the shirt and knife," a reasonable jury could find that the officers violated the plaintiff's Fourth Amendment rights when they pointed their guns at the plaintiff "given the low level of threat." *Id.*

As in *Espinosa*, (1) Appellants pointed their guns at Mr. Hopson knowing that he was not accused of *having committed* any crime—again, *suspicion* that Mr. Hopson *might* commit a crime in the future is not the same as having already committed one or being suspected of having committed one, *see, e.g.*, ER-007-011; and (2) Mr. Hopson did not present a danger to Appellants or anyone else, as the district court correctly concluded when taking the facts in the light most favorable

to Mr. Hopson, *see id*. at 019. Critically, the facts in *Espinosa* show a more volatile situation than the facts presented here, yet this Court held that qualified immunity did not attach to the officers' conduct. Specifically, Appellants in this case had not seen blood (i.e., the "bloody shirt" in *Espinosa*) or hard evidence (i.e., a knife on any suspect as in *Espinosa*) tending to suggest that Mr. Hopson could be dangerous.[7] In sum, following *Espinosa*, any reasonable officer would know that pointing his weapon at a suspect who is not accused of having committed a crime and does not pose a threat is a violation of a plaintiff's Fourth Amendment rights— even if the officers are in a volatile, uncertain situation. *See Espinosa*, 598 F.3d at 537-38. Officers in Appellants' position were thus on notice that their substantially similar conduct would be unconstitutional under clearly established law.

Other long-standing cases in this Circuit similarly put Appellants on notice that their conduct—pointing loaded weapons at Mr. Hopson when he posed no threat to them—constituted excessive force. *Tekle*, 511 F.3d at 847 ("We have held since 1984 that pointing a gun at a suspect's head can constitute excessive

---

[7] Although the events in *Espinosa* took place inside a home, the Court analyzed the plaintiff's excessive force claim as a separate issue—that is, independent of plaintiff's argument that he had a reasonable expectation of privacy in the home— because there was a dispute about whether the emergency and exigency exceptions to the Fourth Amendment warrant requirement applied to the situation at hand.

force in this circuit."). For example, in *Robinson*, officers responded to a call about an armed suspect who had shot two dogs on the street. 278 F.3d at 1014-15. Upon arrival at the scene, the officers pointed their weapons at the suspect, even though the suspect had a calm demeanor and no visible weapons on him. *Id*. This Court stated:

> The development of the law … allows us to recognize as a general principle that pointing a gun to the head of an apparently unarmed suspect during an investigation can be a violation of the Fourth Amendment, especially where the individual poses no particular danger.

*Id*. Thus, *Robinson* also put officers on notice of the applicability of this "general principle" even in circumstances where officers are responding to a volatile situation involving weapons (e.g., the shooting of dogs). Here, Appellants chose to point their loaded weapons at Mr. Hopson, even though (1) he was not suspected of having committed any crime—much less suspected of shooting anyone or anything, *see* ER-008-011; and (2) as the district court noted, nothing in the record suggests Appellants thought Mr. Hopson was armed or that he posed a threat to Appellants, *see id*. Like *Espinosa*, *Robinson* also put Appellants on notice that pointing their weapons at Mr. Hopson was unconstitutional in light of the circumstances.

Finally, precedent from various other circuits would have similarly put Appellants on notice.[8] *See, e.g.*, *Stamps v. Town of Framingham*, 813 F.3d 27, 39-40 (1st Cir. 2016) ("[A] reasonable officer … would have understood that pointing his loaded assault rifle at the head of a … person who presents no danger, with the safety off and a finger on the trigger, constituted excessive force in violation of that person's Fourth Amendment rights."); *Turmon v. Jordan*, 405 F.3d 202, 207-08 (4th Cir. 2005) (noting that "'the severity of the crime' [could not] be taken into account *because there was no crime*" and holding that "it would have been clear to a reasonable officer that he could not point his gun at an individual[] … where there was no reasonable suspicion that any crime had been committed, no indication that the individual posed a threat to the officer, and no indication that the individual was attempting to resist or evade detention") (emphasis added); *Brown v. Lewis*, 779 F.3d 401, 418 (6th Cir. 2015) (holding that officers used unreasonable force where they pointed guns at a plaintiff without "certain[ty] that any crime *had occurred*") (emphasis added); *Baird v. Renbarger*, 576 F.3d 340,

---

[8] Existing precedent may come from other circuits. *See, e.g.*, *Horton v. City of Santa Maria*, 915 F.3d 592, 601 n.9 (9th Cir. 2019) ("In the absence of binding precedent, we look to whatever decisional law is available to ascertain whether the law is clearly established for qualified immunity purposes, including decisions of state courts, other circuits, and district courts.") (citation omitted); *Moonin v. Tice*, 868 F.3d 853, 868 (9th Cir. 2017) (same); *Tarabochia v. Adkins*, 766 F.3d 1115, 1125 (9th Cir. 2014) (same).

242, 342-46 (7th Cir. 2009) (holding that officers used excessive force in pointing their weapons at the plaintiff while searching his vehicle because the officers were only investigating an "alleged crime," there was "no suggestion that anyone at the search location was armed or dangerous," and "no one at the site presented any resistance"); *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1192–93, 1196–97 (10th Cir. 2001) ("We can find no substantial grounds for a reasonable officer to conclude that there was legitimate justification for continuing to hold the young people outside the residence directly at gunpoint after they had completely submitted to the SWAT deputies' initial show of force.").

2.     <u>Appellants' Attempt to Distinguish Existing Precedent From The Facts of This Case Are Unavailing.</u>

Appellants attempt to distinguish this case from clearly established law on the following grounds:

> (1) the incident in this case occurred during a traffic stop, rather than in the plaintiff's home; (2) the plaintiff was being stopped on suspicion of committing a serious felony, rather than a minor offense; and (3) the officers reasonably (and correctly) believed the plaintiff and his associate were armed, as they suspected these two men were "casing" the gas station for an armed robbery.

Dkt. 5 at 28. Appellants are plainly wrong on all three counts.

*First*, as described above, there is plentiful clearly established law regarding the brandishing of guns in the context of *Terry* stops outside the home. As previously explained, *Washington* and other existing law put Appellants on notice

that, even during a *Terry* stop, they could not have constitutionally pointed their weapons at Mr. Hopson.  *See* Section III.A.1, *supra*.

*Second*, contrary to Appellants' contentions, Appellants "*suspected* that [Mr. Hopson] *might* commit a crime" at *some indefinite time in the future*, but Appellants "did not know whether [Mr. Hopson] had committed or was about to commit any crime."  ER-018.  In other words, when Appellants conducted their *Terry* stop, Mr. Hopson had not violated any traffic laws, much less committed a misdemeanor or a felony.

And *third*, as repeatedly explained, the record is devoid of evidence suggesting that Appellants believed, reasonably or otherwise, that Mr. Hopson was armed or posed a threat to Appellants or others.  *See* Section I, *supra*.  Thus, whether clearly established law put Appellants on notice that their conduct was unconstitutional must be viewed in light of two key facts: (1) Appellants had no indication that Mr. Hopson was armed or dangerous, and (2) Mr. Hopson did not pose a threat to Appellants or others.  *See* ER-018-019.  To the extent Appellants dispute either of these two facts, the district court properly denied Appellants' summary judgment motion, because disputed issues of fact cannot be resolved at this stage of the proceedings—and this Court lacks jurisdiction to review them in this interlocutory appeal.  *See Green*, 751 F.3d at 1052; *Jeffers*, 267 F.3d at 903.

In any event, *Robinson* put Appellants on notice that pointing their weapons at Mr. Hopson was unconstitutional. *See* Section III.C.1, *supra*. Appellants try to distinguish *Robinson* because the plaintiff there (a) "was clearly unarmed," (b) "was suspected of committing only a misdemeanor," and (c) "was standing within the curtilage of his home with his hands up." Appellants' arguments are again wrong.

*First*, nothing in the *Robinson* opinion suggests that the officers knew that the plaintiff "was clearly unarmed." Indeed, the plaintiff "was in fact wearing a four-inch utility knife strapped to his belt." *Robinson*, 278 F.3d at 1011. *Second*, the plaintiff was suspected of a misdemeanor *involving weapons* (i.e., shooting two dogs in the street). The Court said that the plaintiff's use of a weapon was the "only circumstance[] in the case *favoring* the use of force," but nonetheless held that plaintiff's "earlier use of a weapon, that he clearly no longer carried, is insufficient to justify the intrusion on Robinson's personal security." *Id*. at 1014. The Court then concluded, notwithstanding the plaintiff's use of weapons, that the officers had used excessive force in violation of the Fourth Amendment. And *third*, the plaintiff was *outside* his home, "near[] the street," and the Court did not even suggest that the plaintiff's proximity to his home factored into the analysis.

Appellants similarly fail in their attempt to distinguish *Thompson v. Rahr*, 885 F.3d 582 (9th Cir. 2018). In *Thompson*, the officer pointed a gun at the

plaintiff during a traffic stop *after* the officer (1) patted the plaintiff for weapons and found none; (2) ran the plaintiff's identifying information and "discovered" that the plaintiff "was a convicted felon, and that his most recent felony conviction was for possessing a firearm," and (3) found a loaded gun in the plaintiff's vehicle. *Id*. at 584-85. This Court first held that, "[i]n the end, pointing guns at persons who are compliant and present no danger is a constitutional violation." *Id*. at 587. It then held that the officer was entitled to qualified immunity because:

> [W]e cannot say that every reasonable officer in [officer's] position would have known that he was violating the constitution by pointing a gun at [plaintiff]. [Plaintiff]'s *nighttime, felony arrest* arising from an automobile stop, in which a gun was found, coupled with a fluid, dangerous situation, distinguishes this case from our earlier precedent. More specifically, [Officer] was *conducting a felony arrest at night of a suspect who was not handcuffed, stood six feet tall and weighed two hundred and sixty-five pounds, was taller and heavier than [officer]*, and had a *prior felony conviction for unlawfully possessing a firearm*. Although [plaintiff] was cooperative, the situation was still critical in terms of potential danger to the officers, especially given that a loaded gun was only 10–15 feet away.

*Id*. at 588 (emphasis added). By contrast to the officer in *Thompson*, Appellants pointed their weapons at Mr. Hopson *before* they knew a single thing about Mr. Hopson's criminal record, and *before* they found a weapon in Mr. Hopson's vehicle. As already explained, Appellants were on notice that pointing their weapons at Mr. Hopson based only on mere suspicion violated Mr. Hopson's Fourth Amendment rights. *See* Section III.A.1, *supra*.

Finally, Appellants contend that "[t]his Court recently addressed a case with similar facts in *Smith v. City of Stockton*, 818 F. App'x 697 (9th Cir. 2020)," in which the Court reversed a district court's denial of qualified immunity. Contrary to Appellants' suggestion, *Smith* is clearly distinguishable from this case. In the Court's own words:

> Before stopping the car in which [plaintiff] was a passenger, [officer] had been informed that there was an outstanding *felony bench warrant* for [plaintiff's] arrest. *After the stop, as [officer] was exiting his police vehicle, [plaintiff] unexpectedly exited the car. [Officer] then drew his gun and pointed it at [plaintiff]*. At the time of this incident, there was no clearly established law that would have alerted an officer in [this] position that pointing a gun in these circumstances would violate the Fourth Amendment.

*Id*. at 699 (emphasis added). Unlike *Smith* in which the officer had "*specific* information" about the plaintiff's outstanding felony bench warrant, Appellants had not received any "*specific* information" about Mr. Hopson tending to suggest that he was armed or dangerous *before* Appellants chose to point their weapons at him. *See* Section III.A.1, *supra*. Further, while the officer in *Smith* drew his weapon "[a]fter the stop" and after the plaintiff "unexpectedly exited the car," *id*., here, Appellants pointed their weapons at Mr. Hopson as they approached his car without any indication that Mr. Hopson was armed or dangerous, and Mr. Hopson did not "unexpectedly" exit his vehicle or make any sudden movements so as to suggest any danger to Appellants. Accordingly, *Smith* has no bearing on the issues presented here.

In short, clearly established law put Appellants on notice that pointing weapons at Mr. Hopson while he was seated in a car—with no evidence that he posed a threat to anyone or had committed a crime—violated Mr. Hopson's Fourth Amendment rights, and none of Appellants' arguments show otherwise.

### B. Appellants Violated Clearly Established Law When They Used Force Against Mr. Hopson Without Identifying As Officers

A robust consensus of persuasive authority also put Appellants on notice that using force against a suspect without identifying themselves as officers constituted excessive force. *Vlasak*, 213 F. App'x at 514; *see also Bryan v. Las Vegas Metro. Police Dep't*, 349 F. App'x 132, 135 (9th Cir. 2009) (finding district court erred in granting qualified immunity to officer because a key fact—whether the officer identified himself as a police officer—remained in dispute); *Willis v. City of Fresno*, 520 F. App'x 590, 591 (9th Cir. 2013) (reversing district court's grant of summary judgment when evidence suggested that defendant officer failed to identify himself as a police officer); *Yates v. City of Cleveland*, 941 F.2d 444, 447 (6th Cir. 1991) (finding the officer's actions were "cognizable under section 1983" when the officer entered a dark hallway in the entrance of a private residence in the middle of the night and failed to identify himself); *Sledd v. Lindsay*, 102 F.3d 282, 288 (7th Cir. 1996) (denying qualified immunity when officers "failed to identify themselves or to announce their purpose"); *Northington v. Jackson*, 973 F.2d 1518, 1522-24 (10th Cir. 1992) (reversing dismissal of section 1983 action where

corrections officer "put a revolver to [plaintiff's] head without identifying himself as a corrections officer, [and] threatened to kill him").

In *Vlasak*, officers arrested the plaintiff—who posed no threat to the officers or others—without identifying themselves as police. *Vlasak*, 213 F. App'x at 514.[9] This Court explained that the question whether the officers "used excessive force depends on whether they had identified themselves to [plaintiff] as police officers." *Id*. Accordingly, accepting the factual inferences in the light most favorable to plaintiff, the officers were not entitled to qualified immunity because the plaintiff alleged that the officers failed to identify themselves as officers. *Id*. Following *Vlasak*, it became clearly established law that officers who fail to identify themselves as police "unnecessarily create[] a situation … and in which their use of force [i]s unnecessary and therefore excessive." *See id*.

The facts of this case, taken in the light most favorable to Mr. Hopson, very much resemble those in *Vlasak*. Specifically, Appellants, just like the officers in *Vlasak*, used force without identifying themselves as officers. *See* ER-080. And because Appellants failed to identify themselves as officers, Mr. Hopson thought

---

[9] Although an unpublished decision alone may not be enough to create clearly established law, when coupled with the weight of authority discussed above, Appellants were on notice that using force against a suspect without identifying themselves as officers constituted excessive force. *See Hines v. Youseff*, 914 F.3d 1218, 1229-30 (9th Cir. 2019).

Appellants were robbing him and Mr. Hopson was therefore in a "state of shock" when Appellant Alexander "forcefully" removed Mr. Hopson from his vehicle and then applied force to Mr. Hopson's left arm. *See*, *e.g.*, *id.* And, as in *Vlasak*, Mr. Hopson did not pose a threat to Appellants or others. *See id.* at 018. Accepting the factual inferences in the light most favorable to Mr. Hopson, officers in Appellants' position were thus on notice that their failure to identify themselves as police would render their use of force "unnecessary and therefore excessive." *Vlasak*, 213 F. App'x at 514. Further, to the extent Appellants contend they did identify as police officers, the district court properly denied Appellants' claim to qualified immunity because disputed issues of fact cannot be resolved at this stage of the proceedings, and the Court lacks jurisdiction to decide disputed facts now. *See id.*; *see also Green*, 751 F.3d at 1052.

### C. Appellants Violated Clearly Established Law When They Effectuated Mr. Hopson's Arrest

Even assuming Appellants identified themselves as officers (they did not), existing precedent put Appellants on notice that their conduct in effectuating Mr. Hopson's arrest constituted excessive force. In *Winterrowd*, officers ordered a plaintiff—suspected of driving with invalid plates—to get out of his vehicle after the plaintiff was unable to produce a valid registration. 480 F.3d at 1185. Although the officers "saw no signs of a weapon" and plaintiff "offered no physical threat to the officers," the officers "forc[ed]" plaintiff onto the hood of the

car, "grabbed [plaintiff's] right arm and forced it up," causing plaintiff to "scream[] in pain." *Id*. at 1182-83. The Ninth Circuit held that the officers violated clearly established law because, as of 1998, "[n]o reasonable officer would believe he could constitutionally force a harmless motorist against the hood of a car and cause him unnecessary pain" in the arms. *Id*. at 1186.

Similarly, in *Liberal v. Estrada*, an officer "ordered Plaintiff to get out of his car," and then the "officer grabbed him by the wrist, pulled him out of the car, spun him around … shoved [him] against the door," after which the plaintiff was handcuffed. 632 F.3d at 1069 (9th Cir. 2011). Although the plaintiff was stopped for "trying to flee," this Court held that, because "Plaintiff did not pose an immediate threat to anyone's safety and was complying with the officer's request to step out of his car," the officer's force was "not reasonable and violated clearly established constitutional law." *Id*. at 1079.

Following *Winterrowd* and *Liberal*, it became clearly established law that police officers—in effecting an arrest of a cooperative suspect who poses no threat to anyone's safety—cannot yank a suspect's arm or cause pain (*Winterrowd*), nor can officers drag suspects out of their cars and forcefully handcuff them (*Liberal*). *See also Turmon*, 405 F.3d at 208 ("[I]t would have been clear to a reasonable officer that he could not … jerk him from his room[] and handcuff him where there was … no indication that the individual posed a threat to the officer, and no

indication that the individual was attempting to resist or evade detention."). Here, although there was no evidence that Mr. Hopson was a threat to Appellants, *see* ER-008-011, Appellant Alexander "forcefully removed" Mr. Hopson from his vehicle and then applied significant force to his left arm—all while Mr. Hopson followed Appellants' orders (even though Appellants had not identified as officers, Mr. Hopson followed orders because he thought he was being robbed). *See, e.g.*, *id*. at 007-008, 080-081. Appellants were thus on notice that their substantially similar conduct is unconstitutional. Further, to the extent Appellants dispute any facts alleged by Mr. Hopson, the district court properly denied Appellants' claim to qualified immunity at this stage of the proceedings, and the Court lacks jurisdiction to decide disputed facts now. *See Green*, 751 F.3d at 1052.

### D. Appellants Violated Clearly Established Law When They Used Force Without Reasonable Suspicion

Existing precedent also put Appellants on notice that the use of force during an unlawful stop—that is, a traffic stop that did not rest on reasonable suspicion—constitutes excessive force. In *Liberal*, an officer stopped a driver, forcefully removed him from the vehicle, shoved him against the car door, and handcuffed him for about 90 minutes. *Liberal*, 632 F.3d at 1078. In holding that the officers were not entitled to qualified immunity, the Ninth Circuit reasoned that:

> [T]he traffic stop was unlawful because it did not rest on a reasonable suspicion that a violation of law had occurred. Therefore, it would not have been reasonable for Officers … to stop and frisk Plaintiff, *let*

*alone use physical force to extract him from his car, shove him against its door, and handcuff him for about half an hour*.

*Id*. at 1079.

The facts of this case very much resemble those in *Liberal*. Specifically, in granting Mr. Hopson's motion to suppress all evidence from the stop in the underlying criminal case, Maricopa County Superior Court held that "there was insufficient justification for an investigatory stop at the time the stop was initiated." ER-011. In other words, Appellants had no reasonable suspicion to approach Mr. Hopson's vehicle in the first place. *See id*. Therefore, as in *Liberal*, it was unreasonable for Appellants to use any physical force against Mr. Hopson— including pointing a weapon at Mr. Hopson, forcefully removing him from his vehicle, and then forcefully handcuffing him. *See, e.g.*, *Liberal*, 632 F.3d at 1078; *Headwaters*, 240 F.3d at 1199.

## CONCLUSION

For the foregoing reasons, the Court should dismiss the interlocutory appeal for lack of jurisdiction, or alternatively affirm the judgment of the district court.

Respectfully submitted,

/s/  Mary V. Sooter
MARY V. SOOTER
MARGARITA BOTERO
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1225 Seventh Street, Unit 2600
Denver, CO  80202
(720) 274-3135

SOPHIE B. COOPER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
One Front Street, Suite 3500
San Francisco, CA 949111
(628) 235-1000

THOMAS F. LAMPERT
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000

OREN NIMNI
RIGHTS BEHIND BARS
416 Florida Ave. NW Unit #26152
Washington, DC 20001
(202) 540-0029

*Attorneys for Plaintiff-Appellee*

March 24, 2022

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, I certify that I am not aware of any

related case presently pending in this Court.

/s/  Mary V. Sooter
MARY V. SOOTER

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 32(g), the undersigned hereby certifies that this brief complies with the type-volume limitation of Circuit Rule 32.1(a).

1. Exclusive of the exempted portions of the brief, as provided in Fed. R. App. P. 32(f), the brief contains 12,546 words.

2. The brief has been prepared in proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman font. As permitted by Fed. R. App. P. 32(g), the undersigned has relied upon the word count feature of this word processing system in preparing this certificate.

/s/ Mary V. Sooter
MARY V. SOOTER

*Attorney for Plaintiff-Appellee*

March 24, 2022

# ADDENDUM

**ADDENDUM**
**TABLE OF CONTENTS**

U.S. Const. amend. IV……………………...……………………………………………Add.1

42 U.S.C. § 1983……………………………………………………………………Add.1

# RELEVANT CONSTITUTIONAL AND STATUTORY PROVISIONS

## U.S. Const. amend. IV

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

## 42 U.S.C. § 1983

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of March, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ Mary V. Sooter
MARY V. SOOTER
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1225 Seventh Street, Unit 2600
Denver, CO 80202
(720) 274-3135